IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| TRAVIS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 3:24-CV-00076 |
| | ) | |
| ALKERMES, INC., | ) | JUDGE CORKER |
| | ) | MAGISTRATE JUDGE POPLIN |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, Alkermes, Inc. ("Alkermes") submits this Memorandum in Support of its Motion to Dismiss Plaintiff, Travis Williams' ("Plaintiff") claims of race discrimination under 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), sex discrimination pursuant to Title VII, and retaliation/retaliatory harassment pursuant to Title VII pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's claims border on frivolous. The Amended Complaint lacks allegations regarding key elements of every claim, and instead is rife with bombastic language bemoaning the rise of Diversity, Equity and Inclusion programs around the country and at Alkermes in 2020. It is clear that Plaintiff fills the Amended Complaint with blustering rhetoric and italics to distract from the fact that Plaintiff was not replaced by anyone outside of his protected classes, nor was he treated less favorably than anyone who engaged in the same conduct as he. This essential element of a prima facie case of race and sex discrimination is conspicuously absent from the Amended Complaint. Similarly, Plaintiff fails to allege nearly every element of a claim of retaliatory harassment.

Alkermes expects that the Court will not be fooled by Plaintiff's attempt to stoke the flames of racial unrest to mask the fact that he cannot state, and has not stated, claims under Section 1981

or Title VII. Plaintiff's Amended Complaint falls far short of alleging all material elements of the claims he has asserted; as such, he has failed to state any claims upon which relief may be granted. For this reason, Alkermes respectfully requests that the Court grant is Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff, a white male, worked as Alkermes' District Business Leader ("DBL") in Knoxville, TN, for approximately thirteen (13) years. *See* Am. Compl. ¶ 10. In March 2023, Plaintiff and other field sales employees, including a DBL named Jodi Garcia ("Garcia"), attended Alkermes' national sales team meeting in Orlando, Florida. *Id*. at ¶¶ 21, 22. On March 2, 2023, Alkermes' employees competed in a team-based game called the "Amazing Race" in which approximately fifty (50) to sixty (60) employees participated. *Id*. at ¶ 22. Each DBL received a small paddle to play the game. *Id*. at ¶ 23. The host of the game would ask questions, each DBL would write the correct answer on the paddle, and then race to an "X" at the front of the room. *Id*. The first DBL to stand on the "X" with the correct answer on the paddle earned points for that DBL's district. *Id*.

The game involved some occasional jostling and "light shoving" among DBLs. *Id*. at ¶ 24. There was nothing inappropriate or untoward that occurred amongst the participants. *Id*. In the afternoon of March 2, 2023, Garcia accused Plaintiff of "paddling her bottom" during the Amazing Race game. *Id*. at ¶ 25. Garcia brought forward this accusation about Plaintiff to the Senior Regional Director, who relayed Garcia's allegation to Alkermes' Director of Human Resources, Stephanie Walker ("Walker"). *Id*. at ¶¶ 25, 26. On March 6, 2023, Walker interviewed Garcia about her allegations related to Plaintiff during the Amazing Race game. *Id*. at ¶ 28. During her interview, Garcia informed Walker that "[i]n the hype of the game, we were all having fun running up and

trying to beat out their counterparts; some light pushing, and shoving occurred by all the DBLs and the feeling in the room was fun competition." *Id*. at ¶ 29. Garcia further explained that "Travis hit me on the bottom with the white board and I turned to him and said, "What the f*ck did you just do?" and "If my husband were here, he would f*ck you up."[1] *Id*. at ¶ 29. Garcia claimed that Territory Business Manager, Johanna Hernandez ("Hernandez"), "saw and heard" what happened. *Id*. at ¶¶ 25, 30. On March 6, 2023, Walker interviewed Hernandez, who claimed to have heard the sound of the paddle strike Garcia in the buttocks, recognizing the noise of the paddle on Garcia's bottom because she wore a jumpsuit rather than jeans. *Id*. at ¶ 31.

Later that day, Alkermes' executives received an "anonymous" email from a source called "Very Concerned," with the email handle hopeispossible7@gmail.com. *Id*. at ¶ 32. The subject of the email involved allegations against Plaintiff and upon which Garcia had just been interviewed. *Id*. at ¶ 33. The subject line of the email stated, "Sexual Harassment" and the body of the email contained allegations that Plaintiff had "sexually assaulted and groped" Garcia. *Id*. at ¶¶ 34, 37. Also mentioned in the email was that Plaintiff "slapped her in the derriere and then grabbed and squeezed her," and that Plaintiff "put his arms around her neck and pulled her in very close to him." *Id*. at ¶ 37. On March 7, 2024, Alkermes called Plaintiff to discuss the allegations. *Id.* at ¶ 44. During this call, Plaintiff denied engaging in the conduct at issue. *Id*. at ¶ 45. Alkermes terminated Plaintiff's employment during this call. *Id*. at ¶¶ 42, 45. Alkermes informed Plaintiff that its decision to terminate his employment was because he was guilty of "unacceptable and unwanted physical touching of a colleague at a work event" which was discovered during its investigation. *Id*. at ¶ 46.

---

[1] The writer incorporated these abbreviations and presumes the reader is familiar with its connotation.

Following Plaintiff's termination, Plaintiff alleges that the following occurred:

- On March 16, 2023, an anonymous person sent Plaintiff a message on Facebook that said "Heard you got fired. 😊 Loser."

- On March 23, 2023, an anonymous person sent a text to Plaintiff stating that "Tennessee lost and you got fired in the month of March. Damn you must be depressed as a mofo. Sucks to be you."

- On April 14, 2023, an anonymous person posted on a public website—Café Pharma—on which anyone may anonymously post, that a company other than Alkermes was "considering hiring TW, the Knoxville rep who Physically [sic] assaulted a woman in front of 100 people. WOW!!"

- On April 17, 2023, an anonymous person published a statement (on an unknown platform) that this person "heard his HR file was pretty thick and this was the final straw."

*Id*. at ¶ 60.

Plaintiff filed a Charge of Discrimination on July 3, 2023. *See* EEOC Charge, attached hereto as **Exhibit A**.[2] Plaintiff filed the original Complaint on February 20, 2024. Docket No. 1. On April 26, 2024, almost 10 months after Plaintiff filed his EEOC Charge, someone posted

---

[2] The Court may consider the EEOC charges without converting the motion to one for summary judgment. *Speer v. UCOR, LLC*, 2022 U.S. Dist. LEXIS 157271, *32 (E.D. Tenn. 2022) (citing *Ryniewicz v. Clarivate Analytics*, 803 F. App'x. 858, 863 (6th Cir. 2020) ("In evaluating a motion to dismiss, [the Court] 'may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'" (quoting *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016)))). Plaintiff references his EEOC Charge and it is central to the claims in Plaintiff's lawsuit; as such, the Court may consider the attached Charge without converting the instant Motion to Dismiss to a motion for summary judgment. Am. Compl. ¶¶ 5, 60.

"Think they'd hire someone who got fired for assault like T.W.?" on Café Pharma's website. Am. Compl. ¶ 63.

Pursuant to this Court's Order Governing Motions to Dismiss, Docket No. 4, counsel for Alkermes conferred with counsel for Plaintiff regarding Alkermes' intent to file a motion to dismiss; as a result, Plaintiff filed the instant Amended Complaint. Docket No. 12. Alkermes now files the instant Motion to Dismiss as Plaintiff has failed to cure the deficiencies in his original Complaint, as set forth herein.

## LAW AND ARGUMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party. *Doe v. Lee*, 2022 U.S. Dist. LEXIS 25964, *7-8 (E.D.Tenn. 2022) (citing *DIRECTTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (quoting *In re Travel Agent Comm'n Antitrust Litig*., 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotation marks omitted)).

The Sixth Circuit has repeatedly held that in order to state a valid claim or, put another way, to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory". *See, e.g., Smith v. GM LLC*, 988 F.3d 873 (6th Cir. 2021);

*DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014); *Han v. University of Dayton*, 541 Fed. Appx. 622, 625-26 (6th Cir. 2013); *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

The Amended Complaint fails to meet these standards and therefore fails to state a claim. Plaintiff does not include allegations that are even inferential regarding all of the material elements of any of the claims in the Amended Complaint. Specifically, with respect to Plaintiff's claims of intentional discrimination pursuant to Section 1981 and Title VII, Plaintiff has not alleged any facts regarding the final element necessary to state a claim of discrimination—that he was replaced by someone outside of his protected class with respect to the challenged employment action or that he was treated less favorably than someone outside of his protected class with respect to the challenged employment action. Plaintiff's retaliation claims fail even more spectacularly, as Plaintiff does not describe *any* action taken by Alkermes, that could be attributed to Alkermes, or for which Alkermes could bear liability. Plaintiff also fails to describe any materially adverse actions that were taken against him or any severe or pervasive conduct, and he cannot show that any conduct would not have occurred "but for" his protected activity.

### **Plaintiff's Section 1981 and Title VII Discrimination Claims Fail to State a Claim**

As noted above, in order to survive a Motion to Dismiss, a Complaint (or an Amended Complaint) "must contain either direct or inferential allegations respecting ***all the material elements to sustain a recovery under some viable legal theory***". *See, e.g., Smith,* 988 F.3d at 877 (emphasis added); *DiGeronimo Aggregates, LLC,* 763 F.3d at 509 (same); *Han,* 541 Fed. Appx. at 25-26 (same); *Commer. Money Ctr., Inc.*, 508 F.3d at 336; (same) *Mezibov,* 411 F.3d at 716 (same).

Claims brought pursuant to Section 1981 and Title VII are evaluated under the same rubric:

"The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." *Noble v. Brinker Int'l, Inc.,* 391 F.3d 715, 720 (6th Cir. 2004) (alteration in original) (quoting *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 573 n.5 (6th Cir. 2000)). To establish a prima facie case of race discrimination under Title VII (and consequently under Section 1981), a plaintiff must show that: (1) he is a member of a protected class, (2) he was qualified for the job and performed it satisfactorily, (3) despite his qualifications and performance, he suffered an adverse employment action, and (4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated person outside of his protected class. *Wingo v. Mich. Bell Tel. Co.*, 815 Fed. Appx. 43, 45 (6th Cir. 2020) (citing *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015)). To make out a prima facie case for gender discrimination, the prima facie case is virtually identical to that of a race discrimination claim. Specifically, a plaintiff must show that []he was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated [fe]male employees for the same or similar conduct. *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th 2004) (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 928 (6th Cir. 1999)).

Under the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), if a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse action.]". *Wheat*, 785 F.3d at 237 (citing *Burdine*, 450 U.S. at 252-53) (citing *McDonnell Douglas*, 411 U.S. at 802). Only then is a plaintiff permitted to argue that the reasons proffered by the defendant were not its true reasons,

but were mere pretexts for prohibited discrimination. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). In the present matter, Plaintiff improperly attempts to skip the required first step of establishing a prima facie case of discrimination and focuses exclusively on what he incorrectly perceives to be evidence of pretext. As set forth below, Plaintiff has not met the burden of stating a claim upon which relief may be granted as he has not included allegations respecting all the material elements to sustain a recovery under some viable legal theory.

Specifically, in the Amended Complaint, Plaintiff does not allege any facts regarding the fourth element of a prima facie case—that he was replaced by a person outside the protected classes or was treated less favorably than a similarly situated female or non-white person for engaging in similar conduct (*i.e.*, paddling a co-worker on the rear end without permission). This glaring omission precludes Plaintiff from stating a claim of discrimination and warrants dismissal of the Amended Complaint. It is well-settled that a plaintiff must allege facts regarding all material elements of a viable legal theory. It is also well-settled that in order to state a prima facie case of discrimination, a plaintiff must include an allegation that he was replaced by someone outside of the protected class or was treated less favorably than a similarly situated individual for engaging in the same conduct. Such allegations are conspicuously absent from the Amended Complaint.

Instead, Plaintiff focuses his race and sex discrimination claims solely on conduct that can only be described as an attempt to show pretext. Specifically, Plaintiff claims that "not only was he treated differently in the 'investigation,' the circumstances, timing, falsity of the accusations, and other evidence clearly indicate that his race [and/or gender] played a role in the key role in the adverse employment action." Am. Compl. ¶¶ 72, 74. The "other evidence" is overt "anti-woke" language denigrating the actions of Alkermes and other companies in creating Diversity, Equity and Inclusion ("DEI") committees to "address social and cultural issues" and to set "diversity,

8
Case 3:24-cv-00076-DCLC-DCP    Document 14    Filed 05/23/24    Page 8 of 18
PageID #: 100

inclusion, and belonging goals for the company" in 2020, three years prior to the alleged adverse employment action in this case. Am. Compl. ¶ 18.

None of the actions that Plaintiff asserts support his claims of race and sex discrimination actually demonstrates pretext; rather, they are no more than red herrings based on the fact that ***Plaintiff does not get to the pretext stage of the McDonnell Douglas analysis because he has not alleged a prima facie case of discrimination.*** While it is true that the sufficiency of an investigation can potentially become relevant when considering whether an employer's reason for terminating an employee was pretextual under the *McDonnell-Douglas* framework,³ it is also true that before reaching the issue of pretext, Plaintiff must first allege that he was treated differently than a similarly situated non-white or female employee, which he fails to do. *See, e.g., Haughton v. Orchid Automation*, 206 Fed. App'x 524, 532-33 (6th Cir. 2006). The law is clear that "without a prima facie case, the burden can never shift to the defendant to articulate a legitimate, non-discriminatory reason, nor can it shift back to the plaintiff to establish that this reason was a pretext for retaliation." *Hilt v. Nicholson*, 2007 WL 1577701, at *10 n.11 (M.D. Tenn. 2007). Plaintiff may not bypass the required elements of establishing a claim of discrimination and skip to pretext. As such, Plaintiff's distaste for DEI policies is inapposite at this stage.

Rather, at this stage, Plaintiff must include allegations that demonstrate that he was replaced by someone outside of the protected classes or that he was treated less favorably than a similarly situated individual outside of his protected classes who engaged in the same conduct as he. At no point in the Amended Complaint does Plaintiff assert that either a non-white individual or a non-male individual replaced him. Similarly, at no point does Plaintiff assert that a non-white

---

³ Alkermes denies that its investigation demonstrates pretext. Moreover, as set forth herein, this issue is not before the Court.

or non-male individual was accused of paddling a co-worker on the rear end and was not terminated. This failure is fatal to his claim.

Alkermes anticipates that Plaintiff will claim that he has alleged facts regarding the fourth prong of a prima facie case of discrimination case in that he claims that he was "treated differently in the 'investigation'". Am. Compl. ¶¶ 72, 74. However, any such attempt is futile. To prove different treatment, Plaintiff must show that she was treated less favorably than co-workers who were similarly situated ***for the same or similar conduct.*** *Childers v. GM LLC*, 2021 U.S. Dist. LEXIS 119873, *8 (E.D. Mich. 2021) (emphasis added) (citing *Humenny*, 390 F.3d at 906). To be similarly situated, "the individuals with whom [she] compares herself 'must have dealt with the same supervisor, have been subject to the same standards, ***and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.***'" *Id.* (emphasis added) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 599 (6th Cir. 2001)). In the disciplinary context, "[i]n order to be considered similarly situated, employees must have 'engaged in acts of 'comparable seriousness.'" *Wollor v. Collins Aero. Headquarters*, 2024 U.S. Dist. LEXIS 269, *12 (W.D. Ky. 2024) (quoting *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 512 (6th Cir. 2022) (citation omitted)). The key focus in all of the case law on the topic of what constitutes a "similarly situated" comparator is that the comparator must have engaged in the same conduct; a similarly situated comparator is decidedly ***not*** the victim of the alleged serious conduct. In the present matter, that is the individual to whom Plaintiff attempts to compare himself—the victim. This comparison is incorrect and does not show that Plaintiff was treated differently than a similarly situated co-worker. As noted above, Plaintiff utterly fails to identify anyone who was alleged to have engaged in the same or similar conduct as Plaintiff yet was not discharged.

10
Case 3:24-cv-00076-DCLC-DCP Document 14 Filed 05/23/24 Page 10 of 18 PageID #: 102

The Middle District of Tennessee addressed a case with virtually identical allegations and granted the defendant's motion to dismiss, unequivocally holding that "Title VII does not require an employer to believe an employee of one gender over an employee of another gender. Plaintiff is focusing on the wrong comparison." *Kimbrough v. Xtend Heathcare, LLC*, 2016 U.S. Dist. LEXIS 43521 (M.D. Tenn. 2016). In *Kimbrough*, the plaintiff was a former employee of the defendant who claimed that she was wrongfully fired based on her gender in violation of Title VII. *Id.* at *1. The plaintiff claimed that she was falsely accused by a male employee of sexual harassment, that she denied the allegations of harassment, that the defendant failed properly to investigate the allegations and believed the male employee over the plaintiff and that this demonstrated a discriminatory motive. *Id.* As in the present matter, the defendant moved to dismiss the plaintiff's claim for failing to allege that she was treated differently than any similarly situated male employee, which is an essential element of her discrimination claim. *Id.*

The *Kimbrough* court held that the plaintiff's allegation of different treatment during the investigation did not satisfy the requirement that she must allege that the male employee with whom she compares herself was similarly situated to her. *Id.* at *3. The *Kimbrough* court cited well-established case law holding that "to be similarly situated, the individual with whom Plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish his conduct or the employer's treatment of him for it." *Id.* at *4 (citing *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 393 (6th Cir. 2008)). The *Kimbrough* court then held that because the plaintiff had not alleged that a male employee who was accused of sexual harassment was treated differently from her—*i.e.,* she had not alleged that

11

a male employee accused of sexual harassment received a more thorough investigation and/or was not fired—the plaintiff has not shown that she and the male employee engaged in the same conduct. *Id.* The *Kimbrough* court then granted the defendant's motion to dismiss because the plaintiff "***compare[d] herself with the sexual harassment accuser, not a male employee accused of sexual harassment***." *Id.* (emphasis added).

This is the precise situation in the present matter. Plaintiff attempts to compare himself to the accuser, not another accused. This is not the appropriate comparison and does not in any way allege the fourth prong of a prima facie case of race or sex discrimination—that Plaintiff and a comparator outside of his protected classes engaged in the same conduct but were treated differently. Plaintiff has not alleged that anyone else at Alkermes paddled a co-worker on the rear end without permission without recourse. This is the comparison that Plaintiff must make in order to state a claim of race or sex discrimination. Plaintiff's failure to do so is fatal to his claims of race and sex discrimination and warrants dismissal of these claims pursuant to Fed. R. Civ. P. 12(b)(6).

### Plaintiff's Retaliation Allegations Fail to State a Claim

In order to show a prima facie case of retaliation under Title VII, Plaintiff must show that: (1) he engaged in activity protected under Title VII; (2) Alkermes knew that Plaintiff engaged in this protected activity; (3) Alkermes subsequently took an adverse employment action against Plaintiff; and (4) Plaintiff's protected activity was the but-for cause of the adverse employment action. *Lisan v. Wilkie*, 835 Fed. Appx. 831, 834 (6th Cir. 2020) (citing *Wasek v. Arrow Energy Servs., Inc.,* 682 F.3d 463, 468-69 (6th Cir. 2012). Plaintiff has not identified any adverse employment action that Alkermes took following his protected activity. Indeed, Plaintiff has not

12

Case 3:24-cv-00076-DCLC-DCP Document 14 Filed 05/23/24 Page 12 of 18 PageID #: 104

identified any adverse action whatsoever that Alkermes took against Plaintiff other than his termination.

Importantly, regarding protected activity, the Sixth Circuit has held that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination ***only where that investigation occurs pursuant to a pending EEOC charge.*** *Abbott v. Crown Motor Co.,* 348 F.3d 537, 543 (6th Cir. 2003) (citing *EEOC v. Total Sys. Serv., Inc.*, 221 F.3d 1171, 1174 n.2 (11th Cir. 2000) (The participation clause protects an employee's activities that "occur in conjunction with or after the filing of a formal charge with the EEOC," not an employee's participation "in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC"; at a minimum, an employee must have filed a charge with the EEOC or otherwise instigated proceedings under Title VII); *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999) (For activity to receive protection under the participation clause, there must be, at a minimum, "factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII"); *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) (Plaintiff did not engage in protected activity when she lied during an Internal Affairs Investigation by the Marshal's Service, not during any EEOC investigation, because Title VII protects only "accusations made in the context of charges before the Commission").

Plaintiff attempts to characterize his denial of the conduct of which he was accused as protected activity. Am. Compl. ¶ 77. Plaintiff is incorrect. Plaintiff's citation to *Jokich v. Rush Univ. Med. Ctr*., 42 F.4th 626, 634 (7th Cir. 2022) does not support his assertion for a number of reasons. First, this case does not, in any way, hold that participating in an internal investigation unrelated to an EEOC Charge constitutes protected activity. Rather, the quoted language Plaintiff

relies upon is taken directly from the statute that the Sixth Circuit (and many other Circuits) have interpreted to require that an EEOC Charge be filed in order to constitute protected activity. The case itself held that an individual who appeared on a witness list did not engage in protected activity. *Id.* ("To say that appearing with 111 others on a list of potential witnesses counts as 'participation' in a lawsuit stretches the statutory language too far.") (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 746-47 (7th Cir. 2010) (analyzing the text of § 2000e-3(a) and concluding that participating in an internal investigation is generally not protected activity)). Secondly, even if the *Jokich* court had held that participation in an internal investigation qualifies as protected activity for purposes of Title VII retaliation claims (which it does not), this law would be at odds of that of the Sixth Circuit. Thus, there can be no doubt that Plaintiff did not engage in any protected activity prior to his filing an EEOC Charge on July 3, 2023. *See* **Exhibit A**.

Thus, the Court can ignore the conduct Plaintiff alleges occurred prior to the filing of the EEOC Charge, which consists of the following allegations:

- An anonymous person sent Plaintiff a message on Facebook that said "Heard you got fired. ☺ Loser."

- An anonymous person sent a text to Plaintiff stating that "Tennessee lost and you got fired in the month of March. Damn you must be depressed as a mofo. Sucks to be you."

- An anonymous person posted on a public website—Café Pharma—on which anyone may post that another company, not Alkermes, was "considering hiring TW, the Knoxville rep who Physically [sic] assaulted a woman in front of 100 people. WOW!!"

- An anonymous person published a statement (on an unknown platform) that this person "heard his HR file was pretty thick and this was the final straw."

Am. Compl. ¶ 60.

As noted above, this alleged behavior from an unknown individual occurred prior to Plaintiff engaging in any protected activity; none of these comments can be considered to be retaliatory conduct. As noted below, even if this conduct were "post-Charge" conduct (which it was not) and could possibly be considered to be in response to Plaintiff's protected activity (which it cannot), it cannot be attributed to Alkermes, nor can Alkermes be held liable for it. Finally, it is a materially adverse action or severe and pervasive conduct that would not have occurred "but for" Plaintiff's engaging in protected activity.

The only activity that Plaintiff alleges occurred after he filed his EEOC Charge and could possibly be considered retaliatory is a single anonymous post that does not identify Plaintiff. This alleged activity was the following post on Café Pharma's website on April 26, 2024, almost 10 months after Plaintiff filed his EEOC Charge: "Think they'd hire someone who got fired for assault like T.W.?" Am. Compl. ¶ 63. As with the other Café Pharma post and the unknown platform post, this anonymous post does not identify Plaintiff with any particularity, nor is there any indication that anyone at Alkermes was the author.

None of this conduct—pre- or post-Charge—can possibly be attributed to anyone at Alkermes, including Garcia. As noted above, a court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Doe v. Lee*, 2022 U.S. Dist. LEXIS 25964, *7-8 (E.D.Tenn. 2022). Plaintiff's attempt to attribute anonymous messages to Garcia and consequently to Alkermes is speculative at best and is the very definition of "unwarranted factual inferences". There is nothing whatsoever connecting these statements to Alkermes; as such, Plaintiff has not viably alleged that Alkermes took any action, adverse or otherwise, against him as a result of his filing an EEOC Charge.

Moreover, even if the comments were posted by Garcia, the Supreme Court of the United States has unequivocally held that "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). It is undisputed that Garcia and Plaintiff were peers who held the same position— District Business Leader. Am. Compl. ¶ 21. Therefore, Alkermes could not have empowered Garcia to take tangible employment actions against Plaintiff, and importantly, Plaintiff has not alleged as much. Under the facts Plaintiff has set forth in the Amended Complaint, there is no possible scenario under which Alkermes could be held liable for the conduct in question. This fact alone should end the inquiry and judgment should be entered in favor of Alkermes.

Further, the alleged action taken by the unknown person post-Charge does not constitute a materially adverse action.[4] A materially adverse action is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Cecil v. Louisville Water Co.*, 301 Fed. Appx. 490, 501 (6th Cir. 2008) (quoting *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). A materially adverse action does not include trivial harms, such as "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* A single anonymous post that does not identify Plaintiff by name (and that is a true statement) cannot possibly be considered anything other than a "trivial harm," "petty slight" or "minor annoyance." To the extent that Plaintiff is attempting to

---

[4] The alleged pre-Charge actions also do not constitute materially adverse actions for the same reasons that the post-Charge action does not—they are at best a "trivial harm", "petty slight" or "minor annoyance".

characterize the action as harassment, a single post that does not even refer to Plaintiff cannot possibly be considered either severe or pervasive under any circumstance. Thus, any claim that this conduct constitutes "retaliatory harassment" also fails to state a claim.

Under no circumstances could this singular anonymous post be considered a (1) "materially adverse action" (2) against Plaintiff (3) by Alkermes (4) that would not have occurred "but for" Plaintiff's filing of an EEOC Charge. Indeed, it is necessary that Plaintiff allege that the conduct in question would not have occurred "but for" his filing of the EEOC Charge. *Lisan v. Wilkie*, 835 Fed. Appx. at 834. Plaintiff has not alleged this essential element of a retaliation claim, nor can he. As Plaintiff's Amended Complaint makes clear, ***the same conduct that forms the basis of Plaintiff's retaliation claim also occurred prior to Plaintiff engaging in protected activity***. Thus, Plaintiff cannot possibly show that the conduct (which is not materially adverse or attributable to Alkermes, nor can Alkermes be held liable for the conduct) would not have occurred "but for" his filing of an EEOC Charge.

Plaintiff's failings with respect to the retaliation claim are vast, and he cannot overcome them. He has failed to allege several critical elements of a retaliation claim under Title VII: namely, that Alkermes took any action whatsoever following his protected activity, that the single act that Plaintiff attempts to attribute to Alkermes could possibly be considered materially adverse or severe or pervasive, that the action was taken against Plaintiff, and that the action would not have occurred "but for" his filing of the EEOC Charge. Therefore, Alkermes respectfully submits that dismissal of Plaintiff's retaliation claim pursuant to Fed. R. Civ. P. 12(b)(6) is warranted.

## **CONCLUSION**

For the foregoing reasons, Alkermes respectfully requests that the Court dismiss Plaintiff's Amended Complaint in its entirety and enter judgement as a matter of law in favor of Defendant.

Respectfully submitted,

*/s/ Jennifer S. Rusie*
Jennifer S. Rusie (BPR # 26009)
John R. Adams (BPR # 39284)
Jackson Lewis, P.C.
611 Commerce Street, Suite 2803
Nashville, TN  37203
Telephone: (615) 565-1661
Jennifer.rusie@jacksonlewis.com
John.adams@jacksonlewis.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2024 a copy of the foregoing was served on the following via the Court's CM/ECF System.

>Justin S. Gilbert
>Gilbert Law, PLLC
>100 W. Martin Luther King Blvd.
>Suite 501
>Chattanooga, TN  37402
>justin@schoolandworklaw.com
>
>Ronald A. Rayson
>The Law Office of Ronald A. Rayson
>3800 Keowee Avenue
>Knoxville, TN 37919
>ron@raysonlaw.com

*Attorneys for Plaintiff*

*/s/ Jennifer S. Rusie*
Jennifer S. Rusie

4884-4077-9456, v. 2