**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **TRAVIS WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: 3:24-CV-00076** |
| | ) | |
| **ALKERMES, INC.,** | ) | **JUDGE CORKER** |
| | ) | **MAGISTRATE JUDGE POPLIN** |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Throughout his opposition brief, Plaintiff frequently claims that his Amended Complaint is "thorough" and "detailed" but unfortunately for Plaintiff, the mere presence and high volume of details is simply not the legal standard to survive a motion to dismiss. Facial plausibility is the applicable standard, and the Amended Complaint falls short of this, and woefully so. Plaintiff only offers his unsupported opinion that "DEI [has] run amok in corporate America" and attempts to connect Alkermes' reaction to George Floyd's murder with Plaintiff's termination. This attempt is unsuccessful as Plaintiff provides no facts that support this theory. Instead, Plaintiff relies solely on suppositions, rhetoric, and inaccurate standards to support his claim that he has adequately alleged that his race or sex played a role in his termination.

The backbone of Plaintiff's response is his reliance on *Lindsay v. Yates*, 578 F.3d 407, 416 (6th Cir. 2009), which provides that circumstantial evidence may be sufficient to prove the fourth element of a *prima facie* case of discrimination when there is "additional evidence" to infer a discriminatory motive ***in discriminatory housing cases***. Plaintiff cites no Sixth Circuit cases that actually apply the *prima facie* standard espoused in *Yates* in the employment context. Notably, the sole Sixth Circuit case that Plaintiff cites for the proposition that the fourth prong is "flexible"—*Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)—does not say what

Plaintiff claims it says. Rather, the Sixth Circuit in *Braithwaite* articulates the same *prima facie* case that is set forth in all of the Sixth Circuit cases in Alkermes' brief:

> As a plaintiff claiming employment discrimination under the Civil Rights Acts, Braithwaite bears the initial burden of establishing a prima facie case of discrimination. He can meet this burden by providing direct or circumstantial evidence that raises a genuine issue that his employer discriminated against him or by simply proving that (1) he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) ***that a person outside the protected class was treated more favorably than him.*** *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)).

*Id.* (emphasis added).

Plaintiff's deception in this regard should not be rewarded.

As set forth more fully herein, the standard espoused by the *Yates* court is not the correct standard; however, even if it were, Plaintiff has not alleged any actual facts that could be considered "additional evidence" of discrimination. The "fact" upon which Plaintiff relies most heavily is not a fact at all—it is his disagreement with the underlying allegation of assault and the outcome of Alkermes' investigation.

Plaintiff's retaliation claim fares no better. Plaintiff claims that his denial of sexual harassment allegations constitutes opposition to protected activity under the opposition clause. It does not. Simply responding to allegations brought against Plaintiff as part of his participation in an internal investigation does ***not*** constitute opposition activity under Title VII. Plaintiff did not complain about illegal activity. Plaintiff did not refuse to obey an order because he thought it was unlawful under Title VII. Plaintiff did not oppose unlawful acts by persons other than his employer. The Amended Complaint is utterly silent on any possible allegation of "opposition" activity to bring the denial of inappropriate conduct within the ambit of the opposition clause. There is also

no post-Charge conduct that is materially adverse to Plaintiff. The only post-Charge conduct described in the Complaint is that some unknown person posted a message about "T.W.". Even if this message identified Plaintiff (which it did not), the message was not defamatory—it accurately described the reason for Plaintiff's termination.

Plaintiff has alleged no facts that render his claims of discrimination and retaliation plausible on their face. As such, Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted and dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6).

**Plaintiff's Section 1981 and Title VII Discrimination Claims Fail to State a Claim**

The Amended Complaint must plead "***factual*** content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Webb v. Kappa Sigma Fraternity*, 2024 U.S. Dist. LEXIS 3542, at *8-9 (M.D. Tenn. Jan. 8, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)) (emphasis added). It does not. Plaintiff spills much ink regarding the distinction between pleading and proving, which is inapposite for the reasons discussed below.

***First***, Plaintiff contends that pleading the *prima facie* elements of the evidentiary *McDonnell Douglas*[1] framework is not required at the pleading stage. In doing so, Plaintiff relies on an unpublished Sixth Circuit decision and ignores the vast number of reported cases Alkermes cites for the proposition that in order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory". *See, e.g., Smith v. GM LLC*, 988 F.3d 873 (6th Cir. 2021); *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014); *Han v. University of Dayton*, 541 Fed. Appx. 622, 625-26 (6th Cir. 2013); *Commer.*

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). These published opinions are binding on this Court. USCS Ct App 6th Cir, Cir R 32.1.

Thus, it is clear that Plaintiff must allege facts regarding all material elements of a viable legal theory for discrimination. Because the Amended Complaint ***does not allege any facts*** regarding the fourth element of a *prima facie* case – that Plaintiff was replaced by a person outside of his protected classes or was treated less favorably than a similarly situated female or non-white person for engaging in similar conduct (*i.e.*, paddling a co-worker on the rear end without permission)—the Amended Complaint does not state a claim upon which relief may be granted and dismissal is warranted.

***Second***, after claiming that the *McDonnell Douglas* evidentiary framework does not require Plaintiff to prove the essential elements of his claim, Plaintiff argues that *McDonnell Douglas* does not always apply. In reliance on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), Plaintiff contends that *McDonnell Douglas* is inappropriate at the motion to dismiss stage because "no proof has been taken" and "[t]he parties do not even know whether direct evidence or circumstantial evidence will be the model." DE 16 at 9. This statement is utterly misplaced at the motion to dismiss stage. The issue before the Court is whether the Amended Complaint has stated a claim of discrimination and retaliation. ***There are no allegations of direct evidence in the Amended Complaint***; therefore, the question before the Court is whether the Amended Complaint has set forth facts supporting all of the elements of the claims of discrimination or retaliation. As such, *Swierkiewicz* is inapposite to this matter.

Further, *Swierkiewicz* addressed pleading thresholds applicable to survive a motion to dismiss; it "did not change the law of pleading." *Smith v. Wrigley Mfg. Co., LLC*, 749 Fed. Appx.

446, 448 (6th Cir. 2018) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As such, Plaintiff cannot rely on *Swierkiewicz* to circumvent the plausibility standard set forth in *Twombly* and *Iqbal*. *See Smith*, 749 F. App'x at 448-49 (finding *Swierkiewicz* offers no gateway for a plaintiff to side-step the "plausibility" standard laid out in *Twombly* and *Iqbal*). Regardless of which model Plaintiff utilizes to pursue his discrimination claims, facial plausibility is required to survive a motion to dismiss. The Amended Complaint does not meet this requisite standard.

***Third***, and in a last-ditch effort to save his discrimination claims from dismissal, Plaintiff claims that proving discrimination circumstantially permits an alternative to pleading the fourth element of a *prima facie* case. Plaintiff argues that this case has not yet reached an evidentiary stage, that no proof exists at the pleading stage, and that discovery will afford rich production of Alkermes and Garcia's conduct in the industry. DE 16 at 10. Ironically, however, discovery is not available to Plaintiff ***unless*** he plausibly pleads a claim. This is a necessary and indispensable first step. The Supreme Court has made it clear that post-*Twombly* and *Iqbal*, the plaintiff must first plead facial plausibility to open the doors to discovery. *See CommonSpirit Health v. HealthTrust Purchasing Grp., L.P.*, 2022 U.S. Dist. LEXIS 81688, at *2-3 (M.D. Tenn. May 5, 2022) (citing *Iqbal*, 556 U.S. at 678-79 (holding that to establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Plaintiff also argues that the fourth element of a *prima facie* case of discrimination is not exclusive or fixed, but rather is flexible. Plaintiff then suggests that he can show circumstances

indicating that race or sex played a role in an adverse employment action. Plaintiff, therefore, must be able to make a connection between the same. He cannot.

Plaintiff relies heavily on *Yates*, 578 F.3d at 407 to circumvent the indispensable comparative evidence requirement that is necessary to prove discriminatory intent, but *Yates* does not provide his saving grace. *Yates* does not create a third possible way for Plaintiff to satisfy the fourth element of a *prima facie* case of discrimination. Instead, *Yates* merely explained the method of using additional evidence in the form of comparator information to show a discriminatory motive ***in a housing discrimination case***. Pre-*Yates*, a *prima facie* case in a housing discrimination case arose when: (1) the plaintiff is a member of a racial minority; (2) he or she applied for and was qualified to purchase certain property or housing; (3) he or she was rejected; and (4) the housing remained available thereafter. *Id.* Unlike an employment case, where a plaintiff may satisfy the fourth prong one of two ways (by showing that a comparator outside of the protected class was treated more favorably or by showing that he or she was replaced by someone outside of the protected class), in a housing case, there was only one option. *Yates* merely added a second means of establishing a *prima facie* case in a housing discrimination case. *Yates* is inapposite to the present matter or any employment cases.

Moreover, even if *Yates* did apply (which it does not), the Sixth Circuit has clearly held that mere satisfaction of the first three elements of the *prima facie* discrimination case, "without more," cannot give rise to an inference of unlawful discrimination. *Yates*, 578 F.3d at 417 (citing *Shah v. General Electric Co.*, 816 F.2d 264, 269 (6th Cir. 1987)). The something "more" or "additional evidence" typically consists of favorable treatment for similarly situated individuals not within the plaintiff's protected class. *Id*. (declaring that an employment discrimination plaintiff "supplies this indispensable comparative evidence at the *prima facie* stage through the last prong

of the *McDonnell-Douglas* test … [i]n particular, by identifying those individuals who are allegedly treated differently."); *see also Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1247 (6th Cir. 1995) (interpreting *Shah* to hold that the fourth element of the *McDonnell Douglas prima facie* case is established by "showing either that the plaintiff was replaced by a person outside of the protected class or that similarly-situated non-protected employees were treated more favorably than the plaintiff"); *Mitchell v. Toledo Hosp*., 964 F.2d 577, 583-84 (6th Cir. 1992) (holding that the plaintiff did not satisfy a *prima facie* test because he did not show that he was treated differently than similarly-situated individuals).

The *Yates* Court held that while "a discriminatory inference is *usually*, and perhaps most readily, generated through evidence of unfavorable treatment of the minority plaintiff vis-à-vis similarly situated individuals, *McDonnell Douglas* and its progeny do not require this always be the case. *Yates*, 578 F.3d at 417. Therefore, the *Yates* Court found that so long as "additional evidence" exists – beyond showing the first three elements of the *McDonnell Douglas* test – that indicates discriminatory intent in "light of common experience," the required "inference of discrimination" can be made in satisfaction of the *prima facie* case. *Id*. at 418. The "additional evidence" which can be relied upon to establish a *prima facie* claim depends on the attendant facts and circumstances. *Id.; see Blair v. Henry Filters, Co.*, 505 F.3d 517, 529 (6th Cir. 2007).

In the instant matter, Plaintiff has not identified any "additional evidence" that indicates any discriminatory intent. Plaintiff repeatedly characterizes Garcia's complaint against Plaintiff as a "false allegation" and faults Alkermes for believing it.[2] This is not a fact, nor is it "additional

---

[2] Plaintiff's "facts" that he contends prove that "Alkermes possessed clear evidence of the false allegations, but in the end, Alkermes was baited by race and gender and knowingly acceded to it" do not support this conclusion. Pl. Resp. p. 6. It is not uncommon for eyewitness reports of events to have minor deviations or for individuals who were present when an incident occurred to fail to see it. Pl. Resp. p. 5. Plaintiff's opinion as to when and how Alkermes should have conducted the investigation also does not support his allegations.

evidence" of discrimination. Garcia's allegation is not false because Plaintiff denies it. It is undisputed that Garcia lodged a complaint about Plaintiff—had Alkermes fabricated the complaint, that would constitute "additional evidence" of discrimination. **However, that is not what happened.** Garcia complained about Williams, and Alkermes investigated this complaint. That Alkermes believed Garcia does not make this allegation "false" and it certainly is not evidence of racism or sexism. The only person who has injected an element of race or sex into this situation is Plaintiff himself—Garcia mentioned nothing of the sort, nor did Alkermes.

Plaintiff claims that the "suspicious timing" may allow an inference of discriminatory motive. *Yates*, 578 F.3d at 418-20 (finding that two-day lapse between sellers' discovery that buyers were African-American and cancellation of sale created inference of discrimination). *Yates* and *Chapman v. Olymbec USA, LLC*, 2023 U.S. Dist. LEXIS 37947, at *16-18 (W.D. Tenn. Mar. 7, 2023),[3] both cited by Plaintiff, dealt with identification of a protected class in relation to the timing of an adverse action, the timing of which these courts found suspicious and created an inference of discrimination. This is simply not the case here. ***Alkermes did not terminate Plaintiff's employment upon discovering his race or gender.*** Alkermes terminated Plaintiff's employment upon conclusion of its investigation into sexual harassment claims against Plaintiff.

Plaintiff cites fifty-six (56) factual allegations from the Amended Complaint – summarized into one sentence – to support his theory that there is "additional evidence" of discrimination. This is non-sensical. None of the factual allegations set forth in the Amended Complaint even remotely suggest that Plaintiff was treated differently because he is White or because he is male. There is simply no logical or legal basis for Plaintiff to assert that the existence of Alkermes' DEI policies

[3] It is ironic that Plaintiff mentions several times throughout his opposition brief that Alkermes' blends the summary judgment and motion to dismiss standards, yet both Yates and Chapman involved matters at the stage of summary judgment.

is sufficient "additional evidence" to support an inference of discriminatory motive. One must travel leaps and bounds to reach this conclusion, and this simply will not suffice to establish circumstantial evidence in support of Plaintiff's discrimination claims.

Plaintiff also claims that in Paragraph 72 of the Amended Complaint will suffice, which alleges, "Williams, who is white, was exceptionally well qualified for his position, he was terminated by Alkermes, and, not only was he treated differently in the "investigation," the circumstances, timing, falsity of the accusation,[4] and other evidence clearly indicate his race played the key role in the adverse employment action." DE 16 at 13. Once again, Plaintiff fails to provide any specific facts and instead relies solely on conclusory assertions. Plaintiff does not allege any ***facts*** that indicate that he was terminated ***because of*** his race or gender, which he must do if the *Yates* standard were to apply (which it does not).

Importantly, Section 1981 prohibits ***intentional*** race discrimination in the making and enforcing of contracts. *Spokojny v. Hampton*, 589 Fed. Appx. 774 (6th Cir. 2014) (citing *Christian v. Wal-Mart Stores, Inc*., 252 F.3d 862, 867-68 (6th Cir. 2001)). "Disparate treatment claims . . . involve intentionally discriminatory employment practices." *Serrano v. Cintas Corp.,* 699 F.3d 884, 892 (6th Cir. 2012) (citing *Bowdish v. Cont'l Accessories, Inc*., 1992 U.S. App. LEXIS 14315 (6th Cir. 1992)). Plaintiffs asserting a disparate-treatment claim must prove discriminatory motive or intent. *Id.* (citing *Huguley v. Gen. Motors Corp*., 52 F.3d 1364, 1371 (6th Cir. 1995) ("Unlike disparate impact, a disparate treatment claim obligates the plaintiff to show discriminatory intent or motive for a particular adverse employment decision."). *See also Foster v. Cuyahoga Cnty. Bd. of Comm'rs*, 1998 U.S. App. LEXIS 1723 (6th Cir. 1998) ("To advance a disparate treatment claim, a plaintiff must show that the employer has a discriminatory motive, which may be shown

---

[4] As noted previously, Plaintiff's disagreement with the underlying allegation of assault does not render it false, nor does it imply that Alkermes' believing Plaintiff was discriminatory.

by direct evidence or through inference based on a prima facie showing of discrimination.") (citing *McDonnell Douglas*, 411 U.S. at 802), cert. denied, 525 U.S. 937, 119 S. Ct. 351, 142 L. Ed. 2d 290 (1998).

The Amended Complaint is devoid of facts implying that Alkermes intentionally discriminated against Plaintiff. To the contrary, Plaintiff repeatedly accuses Alkermes of ***negligence*** with respect to the investigation and termination. Am. Compl. ¶¶ 42, 50. Negligent conduct by an employer does not give rise to a discrimination claim, and Plaintiff's repeated claims that Alkermes' investigation was "shoddy and negligent" are at odds with any claim that Alkermes intentionally discriminated against Plaintiff.

***Fourth***, and in what appears to be a Hail Mary attempt at saving his claim, Plaintiff argues that he has pled differential treatment based upon another accused. The "another accused" identified by Plaintiff is ***another white management-level employee***, that allegedly had sexual harassment allegations brought forward by another Alkermes employee. An appropriate comparator is a coworker who is *outside* of the protected class or classes and is similarly situated in all of the relevant aspects, yet received more favorable treatment than Plaintiff. *Wingo v. Mich. Bell Tel. Co.*, 815 Fed. Appx. 43, 45 (6th Cir. 2020) (citing *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015)). It is axiomatic that another individual, ***that is the same race as Plaintiff***, cannot be a proper comparator for a race discrimination claim. If anything, the fact that Alkermes treated an individual of the same race as Plaintiff differently than Plaintiff underscores the fact that Alkermes did not consider Plaintiff's race at all during the investigation and decision to terminate Plaintiff.[5]

[5] Plaintiff also cannot use this "accused" as a possible comparator for his gender discrimination claim. The Amended Complaint does not even mention the gender of this individual. See *Stiles v. Grainger Cnty.*, 819 F.3d 834, 852 (6th Cir. 2016) (finding that under the disparate treatment theory, a male plaintiff claiming gender discrimination must introduce evidence that his complaints of peer harassment were treated differently by school officials than female

The Amended Complaint does not allege, nor does it offer any factual inferences to suggest, how the investigation of this other white, management-level employee, was handled differently or that Plaintiff was treated less favorably ***because of race or gender***. Instead, Plaintiff focuses on the timing of George Floyd's death and implies that this is somehow is connected to Alkermes' actions. It is not. For example, the conduct of the other individual could have been more severe, the harassment-based allegations could have differed, the individual engaged in the conduct could have had a disciplinary record, the race of the accuser is not mentioned, nor are there any allegations about whether the individual kept their job or was terminated. The point is that Plaintiff's theory requires this Court to connect a parade of hypotheticals. This is the very definition of unwarranted factual inferences.

Further, even if Alkermes engaged in disparate treatment during two investigations (it did not), the Sixth Circuit has ruled that an employer's failure to follow objective evaluation criteria set out in its handbook is not additional evidence that the employer discriminated against a protected employee based on a protected characteristic. *Jones v. First Horizon Nat'l Corp.*, 2010 U.S. Dist. LEXIS 57082, at *30 (W.D. Tenn. 2010) (citing *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268) (6th Cir. 2010) (analyzing in the ADEA context, and finding that absent some countervailing evidence, this reason was insufficient to establish discriminatory intent to establish the fourth element of a prima facie case).

Plaintiff attempts to distinguish *Kimbrough v. Xtend Healthcare*, 2016 U.S. Dist. LEXIS 43521 (M.D. Tenn. Mar. 31, 2016) by claiming "the complaint made no effort to address a shoddy investigation" or any differential treatment. DE 16 at 15. Like the plaintiff in *Kimbrough,* Plaintiff has not alleged that a female employee accused of sexual harassment was treated differently from

students' similar complaints) (internal citation omitted). It is axiomatic that Plaintiff cannot rely on this "accused" as a possible comparator for a gender discrimination claim without stating the gender of this individual.

him; that is, Plaintiff has not alleged that a female employee accused of sexual harassment received a more thorough investigation and/or was not fired. In addition, Plaintiff has not alleged that he accused a female employee of sexual harassment and that his complaint was ignored. Instead, Plaintiff compares himself with the sexual harassment accuser (i.e., the victim), another investigation involving a white employee of an unknown gender and does not compare himself to another female employee accused of sexual harassment. Plaintiff's contention about a "shoddy investigation" not being referenced in *Kimbrough* is inapposite.

The bulk of Plaintiff's case is based on Alkermes believing Garcia instead of him; this is the precise situation in *Kimbrough.* Minute details regarding the investigation do not change this. Again, Plaintiff confuses quantity of facts with quality of facts. A large number of facts will not make up for the lack of facts regarding the elements of a discrimination claim. These are the facts that matter and unfortunately for Plaintiff, they are lacking in this case. As such, Plaintiff's discrimination claims should be dismissed.

**Plaintiff's Retaliation Claim Fails to State a Claim**

Plaintiff claims that the opposition clause applies regardless of whether an EEOC Charge was filed. While true that the opposition clause applies to protected activities under Title VII whether or not formal charges of discrimination have been filed with the EEOC. *See Mengelkamp v. Lake Metro. Hous. Auth*., 549 Fed. Appx. 323, 330-31 (6th Cir. 2013), the opposition clause does not protect all opposition activity. *Jackson v. Bd. of Educ. of the Memphis City Schs. of Memphis*, 494 Fed. Appx. 539, 543 (6th Cir. 2012) (citing *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1312 (6th Cir. 1989) (citation and quotation marks omitted)). "The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition be based on 'a reasonable and good faith belief that the opposed

practices were unlawful." *Id*. at 544 (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (quoting EEOC Compliance Manual, (CCH) ¶ 8806); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (finding retaliation claim under Title VII defeated where no reasonable person would believe that the activity opposed by employee violated Title VII).

Therefore, the touchstone inquiry before this Court is whether Plaintiff can bring his Title VII retaliation claim within the ambit of the opposition clause. Examples of conduct protected by the opposition clause are "***complaining*** to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; ***refusing*** to obey an order because the worker thinks it is unlawful under Title VII; and ***opposing*** unlawful acts by persons other than the employer – e.g., former employers, union, and co-workers." *Dennis v. Canadian Nat'l Ry. Co.*, 2011 U.S. Dist. LEXIS 162812, at *47 (W.D. Tenn. Mar. 31, 2011) (emphasis added) (quoting *Johnson*, 215 F.3d at 579).

The Amended Complaint does not allege anything of the sort prior to his Charge. According to Plaintiff's opposition brief, his "first step of protected activity was denying any inappropriate touching when finally confronted by Alkermes" and that he further engaged in "protected conduct by filing the EEOC Charge." DE 16 at 17. Simply responding to allegations brought against Plaintiff as part of his participation in an internal investigation does ***not*** constitute opposition activity under Title VII. Plaintiff did not complain about illegal activity. Plaintiff did not refuse to obey an order because he thought it was unlawful under Title VII. Plaintiff did not oppose unlawful acts by persons other than his employer. The Amended Complaint is silent regarding any possible allegation of "opposition" activity to bring the denial of inappropriate conduct within the ambit of the opposition clause.

Plaintiff continues to stray the Court down a parade of debauched logic by claiming that all the evidence set forth in his EEOC Charge is "powerful evidence of notice" and should be considered by the Court. "[I]f the alleged retaliatory conduct occurred *before* the employee engaged in protected activity, the two events cannot be causally connected." *Heyden v. Morton Salt, Inc.*, 2015 U.S. Dist. LEXIS 37792, at *19 (N.D. Ohio Mar. 25, 2015) (quoting *Manley v. DeKalb County, Georgia*, 587 Fed. Appx. 507, 512 (11th Cir. 2014) (citing *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006)). Therefore, the Court can ignore the conduct that Plaintiff alleges occurred prior to the filing of the EEOC Charge.

The Café Pharma anonymous website positing is the only ***post-Charge*** conduct referenced in the Amended Complaint. This anonymous post occurred on April 26, 2024, and stated "Think they'd hire someone who got fired for assault like T.W.?" DE 12 at 18-19, ¶ 63. Notably, Plaintiff pleads this allegation as "[u]pon information and belief, this allegation" was "written by, or prompted by, Garcia." DE 12 at 19, ¶ 64. There is no evidence whatsoever that Garcia made the post, and there is no evidence or plausible facts that connect it to Alkermes.

However, if Garcia did in fact make the post (and there is nothing demonstrating that she did, other than Plaintiff's wild speculation), the Amended Complaint does not allege that Alkermes ***knew*** that Garcia would engage in such conduct, nor does it even imply that Alkermes should have known that she would engage in such conduct, as it must in order for Alkermes to be held liable for this conduct. *Chaney v. Haworth, Inc.*, 2019 U.S. Dist. LEXIS 234821, at *13 (W.D. Mich. May 23, 2019) (*Bourini v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 136 Fed. Appx. 747, 750 (6th Cir. 2005). Alkermes is not a mind reader and cannot be held liable for such actions.

Garcia's status as a supervisor or co-worker fares no better for Plaintiff. According to Plaintiff, regardless of whether Garcia was Plaintiff's supervisor, that is sufficient to find Alkermes

vicariously liable. DE 16 at 18. That is inaccurate. A supervisor for the purposes of vicarious liability under Title VII is someone who "is empowered by the employer to take tangible employment actions ***against the victim***." *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 600 (6th Cir. 2018) (emphasis added) (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). When an employee's supervisor directly retaliates against the employee, the employer is vicariously liable for the supervisor's unlawful actions. *Id*. (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998)). The mere fact that Garcia had a supervisory job title does not make her a legal supervisor in the eyes of Title VII. Plaintiff simply does not explain how being a supervisor in general is sufficient to hold Alkermes liable for any possible conduct by Garcia.

Garcia's status as a co-worker is also insufficient to hold Alkermes liable. The Sixth Circuit recognizes that Title VII permits a claim for co-worker retaliation "in appropriate circumstances." *Owen v. Peake*, 2008 U.S. Dist. LEXIS 85751, at *13 (S.D. Ohio Sep. 26, 2008) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008)). The underpinning of Sixth Circuit Title VII case law, in the context of the previously recognized cause of action of employer retaliation, is that a plaintiff must ground her claim on the allegation that the wrongdoer participated in "retaliatory conduct", that is to say, that the wrongdoer's conduct was motivated by a retaliatory animus that stemmed from the plaintiff's participation in protected conduct. *Id*. at 15 (citing *Morris v. Oldham County Fiscal Cour*t, 201 F.3d 784, 792 (6th Cir. 2000) (setting forth *prima facie* case of employer retaliation, under Title VII, to include allegation of retaliatory animus (i.e., causal connection between protected activity and adverse employment action)); *accord Cockrel v. Shelby County School District*, 270 F.3d 1036, 1048 (6th Cir. 2001) (identifying retaliatory animus (i.e., that adverse action was motivated at least in part as response to exercise of constitutional rights) as necessary element of First Amendment retaliation claim).

Notably, the Amended Complaint is silent on any factual allegations which claim that Garcia allegedly engaged in the Café Pharma post ***because*** Plaintiff filed an EEOC Charge or that Garcia even had knowledge of the Charge. Nearly ten (10) months elapsed between these two events. Even if Garcia made the Café Pharma post because she had the "knowledge, the motive, and the opportunity to keep this going" as alleged by Plaintiff, and even if the T.W. initials[6] in this post were that of Plaintiff, this allegation does not imply that Garcia engaged in such conduct ***because*** Plaintiff filed an EEOC Charge. DE 12 at 19, ¶ 64. Therefore, regardless of whether Garcia is a supervisor or co-worker of Plaintiff, the Café Pharma comment (and no other conduct) can be attributable to Alkermes, nor can Alkermes be held liable for it. Under the factual allegations set forth in Plaintiff's Amended Complaint, there is no plausible scenario under which Alkermes could be held liable for the conduct in question.

Further, no post-Charge conduct constitutes a materially adverse action. According to Plaintiff, "[f]alsely accusing a person of assault on an industry-wide pharmaceutical platform is hardly "petty." It is adverse." DE 16 at 19. Yet, one is left to wonder ***how*** such conduct could possibly be considered "adverse" when the information contained on the Café Pharma post is ***true***. Alkermes indeed terminated Plaintiff's employment for exactly what this post suggests – namely, Plaintiff was fired for assault. Plaintiff's contention about any impact to Plaintiff's career fares no better. The Amended Complaint is silent on any factual allegations which state ***how*** Plaintiff's career was adversely impacted by a truthful post. Indeed, the only "fact" regarding this claim is a single conclusory assertion in Paragraph 85 of the Amended Complaint that "this has damaged William's [sic] reputation further and caused him harm."

---

[6] Plaintiff's only argument to support the initials "T.W." being that of Plaintiff are that "[i]t clearly states his initials as the perpetrator of the assault." DE 16 at 19. Plaintiff does not address the fact that this comment does not address Plaintiff by name, nor that it is a true statement.

## Conclusion

At the end of the day, it is clear that the Amended Complaint fails to allege sufficient facts giving rise to the material elements of his claims. Plaintiff's discrimination claims fail as a matter of law because he has failed to allege any facts to suggest that his position was replaced by someone outside of his protected class or that he was treated less favorably than anyone engaged in the same conduct as he. Plaintiff cannot rely on the circumstantial evidence standard set forth in *Yates* as his saving grace. However, even if *Yates* were applicable to this case, the Amended Complaint offers no "additional evidence" that would permit the Court to infer a discriminatory motive.

Similarly, Plaintiff's retaliation claim fails because he has not alleged sufficient facts to show protected activity or a materially adverse employment action. The opposition clause is inapposite to Plaintiff's claim because he did not oppose unlawful activity. The only post-Charge conduct was the Café Pharma post by an anonymous individual, nearly ten (10) months after Plaintiff filed an EEOC Charge. Even if Garcia made this post, Alkermes cannot be held liable for such conduct, which is not materially adverse. The Amended Complaint does not allege that Garcia even knew Plaintiff had filed an EEOC Charge, let alone that she engaged in such conduct because Plaintiff filed an EEOC Charge.

For the reasons set forth in Defendant's Memorandum of Law in Support of its Motion to Dismiss, as well as the arguments herein, Alkermes respectfully moves for the dismissal of Plaintiff's Amended Complaint in its entirety with prejudice for failure to state a claim.

Respectfully submitted,

*/s/ Jennifer S. Rusie*

Jennifer S. Rusie (BPR # 26009)
John R. Adams (BPR # 39284)
Jackson Lewis, P.C.
611 Commerce Street, Suite 2803
Nashville, TN 37203
Telephone: (615) 565-1661
Jennifer.rusie@jacksonlewis.com
John.adams@jacksonlewis.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2024 a copy of the foregoing was served on the following via the Court's CM/ECF System.

Justin S. Gilbert
Gilbert Law, PLLC
100 W. Martin Luther King Blvd.
Suite 501
Chattanooga, TN 37402
justin@schoolandworklaw.com

Ronald A. Rayson
The Law Office of Ronald A. Rayson
3800 Keowee Avenue
Knoxville, TN 37919
ron@raysonlaw.com

*Attorneys for Plaintiff*

*/s/ Jennifer S. Rusie*
Jennifer S. Rusie

4865-8376-6470, v. 1