UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| TRAVIS WILLIAMS, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | 3:24-CV-00076-DCLC-DCP |
| | ) | |
| v. | ) | |
| | ) | |
| ALKERMES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Alkermes, Inc.'s Motion to Dismiss [Doc. 13]. The motion is fully briefed and ripe for review. For the reasons stated herein, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND**

Defendant Alkermes, Inc. is a large pharmaceutical company with a principal place of business in Waltham, Massachusetts [Doc. 12, ¶¶ 2, 12]. Plaintiff Travis Williams worked as Defendant's District Sales Manager in Knoxville, Tennessee for approximately thirteen years, selling a drug known as Vivitrol [*Id*. at ¶ 10]. In March 2023, Plaintiff and other District Business Leaders ("DBL") attended Defendant's national sales team meeting in Orlando, Florida [*Id*. at ¶ 22]. At the afternoon session on March 2, 2023, approximately 50 to 60 employees competed in a team-based game [*Id*.]. During the game, referred to as the "Amazing Race," each DBL received a small paddle, the host of the game asked questions, the teams wrote their answers on the paddle, and the DBLs raced to an "X" at the front of the room [*Id*. at ¶ 23]. The goal of the game was to be the first one to stand on the X with the correct answer on the paddle [*Id*.].

1

Following the afternoon session, Jodi Garcia, a fellow DBL, reported to Michael Bauer, Defendant's Senior Regional Director, that Plaintiff "paddled her bottom" during the Amazing Race game [*Id*. at ¶ 25]. Ms. Garcia indicated that Johanna Hernandez, a Territory Business Manager, witnessed the incident [*Id*.]. Mr. Bauer relayed Ms. Garcia's allegation to Stephanie Walker, Defendant's Director of Human Resources, but advised that he did not witness the alleged incident and did not see any inappropriate act by Plaintiff toward Ms. Garcia [*Id*. at ¶ 26].

Four days later, Ms. Walker interviewed Ms. Garcia via telephone [*Id*. at ¶ 28]. Ms. Garcia stated, "In the hype of the game, we were all having fun running up and trying to beat out their counterparts; some light pushing, and shoving occurred by all the DBLs and the feeling in the room was fun competition" but added, "Travis hit me on the bottom with the white board and I turned to him and said, 'What the [f***] did you just do?' 'If my husband were here, he would [f***] you up.'" [*Id*. at ¶ 29]. Ms. Garcia reiterated that Ms. Hernandez saw and heard what happened [*Id*. at ¶ 30]. Shortly thereafter, Ms. Walker interviewed Ms. Hernandez, who "claimed to have heard the sound of the paddle strike Garcia on the buttocks, recognizing the noise of the paddle on Garcia's bottom because [she] wore a jumpsuit rather than jeans" [*Id*. at ¶ 31]. Ms. Hernandez also referenced that Ms. Garcia was the "only female DBL in leadership" but made no mention of seeing or hearing any confrontation or any cursing by her [*Id*.].

Within hours of the interviews, 12 of Defendant's executives received an anonymous email with the subject line "Sexual Harassment" [*Id*. at ¶¶ 32, 34]. The email, from a source named "Very Concerned" and the email address hopeispossible7@gmail.com, addressed the allegations against Plaintiff [*Id*. at ¶¶ 32, 33]. The email alleged that Plaintiff "sexually assaulted and groped" Ms. Garcia, "slapped her in the derriere and then grabbed and squeezed her[,]" "put his arms around her neck and pulled her in very close to him," and was "so aggressive in front of a crowd" [*Id*. at ¶ 37]. The email additionally "taunt[ed] the all-white executives, predicting they would

2

discriminate based upon race because [Plaintiff] was white, and Garcia black" [*Id*. at ¶ 39]. Specifically, it stated, "I am certain that this will be glossed over because Mr. Williams is a white male and part of the 'good old boy Network'" and that Plaintiff "compounded the situation tenfold since Mrs. Garcia is a woman of color" and was "just trying to assert his authority and dominance over her" [*Id*.]. Although the email claimed to be from a witness, Plaintiff asserts that it was sent by or at the behest or goading of Ms. Garcia [*Id*. at ¶¶ 33, 34]. Kimberly Mikitka, Defendant's Human Resources Business Partner, forwarded the email to Ms. Walker and Defendant's legal counsel Paul Dubois [*Id*. at ¶ 35]. Ms. Mikitka noted, "I know Stephanie is currently investigating this situation. Wanted to share this email. I haven't been able to reach Steve yet." [*Id*.].

The next day, Defendants interviewed Plaintiff over the phone [*Id*. at ¶ 44]. Plaintiff denied doing anything inappropriate, but he alleges that Defendant led him to believe that the allegations involved the jostling, or "light pushing and shoving," during the Amazing Race game and withheld key details of the allegations to shape the result [*Id*. at ¶ 45]. Defendant announced Plaintiff's termination on the call, but he alleges that the decision had already been made prior to the phone call [*Id*. at ¶¶ 44, 45]. On March 7, 2023, Defendant sent Plaintiff a post-interview letter stating that he was "guilty of 'unacceptable and unwanted physical touching of a colleague at a work event'" [*Id*. at ¶ 46].

Plaintiff alleges that Defendant relied on "flatly contradictory, exaggerated, unreliable, and inconsistent evidence" in making its termination decision and, in truth, "purposely chose the optics of terminating [him] because he is a white male" [*Id*. at ¶¶ 47]. Plaintiff further contends that, in the aftermath of George Floyd's death and the rise of Diversity, Equity, and Inclusion ("DEI") initiatives, Defendant "abandoned its race-neutral process in favor of appearances" and "sacrificed [Plaintiff], the white male, instead of addressing the harder known truth of discrimination by a

3

black employee, Garcia" [*Id*. at ¶¶ 50, 51]. In sum, Plaintiff alleges that Defendant "was baited by race and gender and knowingly acceded to it" [*Id*. at ¶ 52].

Following his termination, Plaintiff alleges that Ms. Garcia and Defendant tried to ruin his career and reputation [*Id*. at pg. 16]. He asserts that Ms. Garcia distributed a hand paddle at the next national sales meeting to mock how she got Plaintiff fired [*Id*. at ¶ 58]. And he alleges that Defendant fired Mr. Bauer after he made a negative comment on an open call about Ms. Garcia's allegations [*Id*. at ¶ 55]. Finally, he asserts that he received anonymous Facebook and text messages taunting him and that an unknown user has posted numerous times about him on the CafePharma online message board [*Id*. at ¶¶ 53, 54, 56, 57, 63]. He believes that the messages and posts were written or prompted by Ms. Garcia [*Id*.].

Based on the foregoing, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and/or sex discrimination pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. ("Title VII") [Doc. 14-1]. On January 22, 2024, the EEOC dismissed Plaintiff's charge and issued a notice of right to sue [Doc. 1-1]. Thereafter, Plaintiff initiated the instant action alleging racial discrimination pursuant to 42 U.S.C. § 1981 ("Section 1981") (Count I); race and gender discrimination under Title VII (Count II); and retaliation and retaliatory harassment under Title VII (Count III) [Doc. 12]. Defendant now moves to dismiss Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6).

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). To survive dismissal, the plaintiff must allege facts that are sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570

4

(2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## III. ANALYSIS

Defendant argues that Plaintiff has failed to state any claims upon which relief may be granted in his Amended Complaint [Doc. 14, pg. 2]. Each of Plaintiff's claims are examined in turn, beginning with the Title VII and Section 1981 discrimination claims, which are analyzed under the same rubric. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

### A. Title VII and Section 1981 Discrimination

Defendant asserts that Plaintiff failed to state a claim for gender discrimination under Title VII and race discrimination under Title VII and Section 1981. Title VII provides, in relevant part, that it is unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). Similarly, Section 1981 "prohibits racial discrimination in the making and enforcing of private contracts." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (citing 42 U.S.C. § 1981).

"A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). When there is direct evidence, "the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination." *Id*. In the absence of direct evidence, the *McDonnell Douglas* burden shifting framework is employed. *Id*. Under that framework, the plaintiff must first establish a *prima facie* case of discrimination, which requires a showing that:

> (1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Id*. at 572–73. If the plaintiff satisfies the foregoing elements, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the [adverse action]." *Id*. at 573 (citation omitted). "If the [employer] carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id*.

Here, Defendant argues that Plaintiff's Amended Complaint fails to state a claim because he does not allege sufficient facts to establish a *prima facie* case of race or gender discrimination under the *McDonnell Douglas* framework [Doc. 14, pg. 8]. Specifically, Defendant contends that Plaintiff failed to include allegations in his complaint to establish the fourth element—that he was replaced by a person outside of his protected class or that he was treated less favorably than a similarly situated person outside of his protected class [*Id*. at pg. 9]. However, the Supreme Court has held that "it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Thus, it is "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Swierkiewicz*, 534 U.S. at 511.

"[B]ecause a plaintiff may ultimately rely on either direct or circumstantial evidence to make out a case of discrimination," the relevant inquiry at the motion-to-dismiss stage is whether a plaintiff alleging employment discrimination has provided "'an adequate factual basis' for a

6

discrimination claim in order to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *James v. Hampton*, 592 F. App'x 449, 460 (6th Cir. 2015) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012)). Put differently, a plaintiff "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,' . . . that [his employer] 'discriminated against [him] with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, sex, or national origin.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citations and alterations omitted).

Plaintiff's Amended Complaint contains sufficient factual allegations from which a reasonable inference can be drawn that Defendant did not fully investigate complaints of misconduct and made the decision to terminate him because he was a white male. Although he has not alleged that he was replaced by or was treated less favorably than a similarly situated individual outside his protected class, that element, and the *McDonnell Douglas* framework as a whole, is inapposite at the current stage of the proceedings. Accordingly, Defendant's motion is **DENIED** to the extent it seeks dismissal of Plaintiff's discrimination claims.

B.   **Title VII Retaliation**

Plaintiff also alleges retaliation and retaliatory harassment under Title VII. "Title VII prohibits retaliation against an employee 'because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' in connection with an allegedly unlawful employment practice." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995 (6th Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)). Title VII also prohibits retaliation against an employee for opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a).

> To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment

action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Hunter*, 565 F.3d at 995–96 (citation omitted).

Plaintiff alleges that since he denied the allegations against him and filed a charge with the EEOC, he has been subjected to retaliatory conduct and/or severe or pervasive retaliatory harassment [Doc. 12, ¶¶ 75–85]. Specifically, he asserts that the allegations contained in his EEOC charge put Defendant on notice that Ms. Garcia was harassing him and attempting to damage his reputation, but Defendant did nothing to stop her [Doc. 16, pgs. 17–18]. To be sure, in the Title VII retaliation context, an employer may be liable for the actions of a coworker if:

> (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination; (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior; and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014).

Here, the only protected activity Plaintiff engaged in was filing the EEOC charge. And the only alleged harassment or retaliatory conduct that took place after that filing was a post on CafePharma's online message board stating, "Think they'd hire someone who got fired for assault like T.W?" [Doc. 12, ¶ 63]. To the extent the foregoing post could be categorized as retaliatory, it was anonymous. Thus, even if Plaintiff is correct in his belief that Ms. Garcia wrote or prompted the post, there are no facts to support the allegations that Defendant condoned, tolerated, or encouraged the post or that Defendant's response, or lack thereof, was unreasonable. In sum, Defendant cannot be held liable for alleged retaliatory actions of an anonymous individual. Accordingly, Defendant's motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's Title VII retaliation and retaliatory harassment claim.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss [Doc. 13] is **GRANTED IN PART** and **DENIED IN PART**. It is further **ORDERED** that Defendant's Motion for Protective Order [Doc. 22], Plaintiff's Motion to Compel [Doc. 26], and Plaintiff's Motion for a Hearing [Doc. 29] are **DENIED AS MOOT**. To the extent the parties find it necessary, they shall confer and file a proposed amended schedule for the instant action on or before **February 28, 2025**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge