UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TRAVIS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 3:24-CV-76-DCLC-DCP |
| ) | |
| ALKERMES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Motion to Compel, for *In Camera* Inspection, and to Hold Deposition and Discovery Deadline in Abeyance and Supporting Memorandum of Law [Doc. 48]. Defendant responded in opposition to the motion [Doc. 55], and Plaintiff filed a reply [Doc. 56]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). Accordingly, for the reasons set forth below, the Court **GRANTS IN PART, HOLDS IN ABEYANCE IN PART, AND DENIES IN PART** Plaintiff's motion [**Doc. 48**].

I.   **BACKGROUND**

According to the allegations in the Amended Complaint, Plaintiff "a white male, worked as [Defendant's] District Sales Manager in Knoxville, Tennessee[,] for approximately thirteen years[, selling] [Defendant's] drug known as Vivitrol" [Doc. 12 ¶ 10]. He asserts that "the May 25, 2020 murder of George Floyd 'unleashed a tidal wave of pledges of support for greater diversity, equity and inclusion (DEI) across corporate American and beyond'" and that soon afterwards, Defendant began "creating new positions and platforms," including several diversity

Case 3:24-cv-00076-DCLC-DCP   Document 65   Filed 09/10/25   Page 1 of 10
PageID #: 602

related committees, with "[t]he collective purpose [] to address 'social and cultural issues,' which included 'setting diversity, inclusion and belonging goals for the company'" [*Id.* ¶¶ 16, 18].

In March 2023, Plaintiff and Jodi Garcia ("Ms. Garcia"), "a black female, [who] is a[] supervisory employee [of Defendant and] who, like [Plaintiff], is a District Business Leader (DBL) . . . along with approximately five other DBLs, attended [Defendant's] national sales team meeting in Orlando, Florida" [*Id.* ¶¶ 21–22]. There, the DBLs "competed in a team-based game called the 'Amazing Race'" [*Id.* ¶ 23]. In that game, the DBLs "received a small paddle similar to an auction-bidding paddle" and the game host would ask questions [*Id.*]. "[The] DBLs would gather the team's response, write the correct answer on the paddle, and then race to an 'X' at the front of the room" [*Id.*]. Plaintiff alleges that on "March 2, 2023, [Ms.] Garcia planted a false accusation against [him]," telling Defendant's Senior Regional Director, Michael Bauer, that "[he] 'paddled her bottom' during the Amazing Race game . . . nam[ing] a minority employee who reports to her, Johanna Hernandez . . . as a witness," and that on "March 7, 2023, without even speaking to [him], and in contravention of its own handbook, historical practices, and common sense, and what it reasonably knew to be false accusations, or with a non-negligent investigation would have certainly known, [Defendant] made the decision to terminate [his] employment" [*Id.* ¶¶ 25, 42].

Plaintiff states that "[a]t 2:52 p.m. on March 6, 2023, four days after the Amazing Race, but within hours of Garcia and Hernandez being interviewed, Defendant's executives received an 'anonymous' email from a source called 'Very Concerned,' with the email handle 'hopeispossible7@gmail.com'" [*Id.* ¶ 32]. Plaintiff notes that "[t]he email claimed to be from a witness. It contained a subject line, 'Sexual Harassment,' and it was sent to . . . [a] list of all-white [Defendant] executives" [*Id.* ¶ 34 (italics omitted)].

2

Plaintiff was advised of his termination on March 7, 2023 [*Id*. ¶ 44]. Plaintiff asserts that Defendant relied on "flatly contradictory, exaggerated, unreliable, and inconsistent evidence" in making the decision to terminate him and "purposely chose the optics of terminating [him] because he is a white male" [*Id*. ¶ 47]. He claims that "after George Floyd and the rise of its DEI initiatives, [Defendant] abandoned its race-neutral process in favor of appearances[, and] [s]o as to be seen as taking the side of the black female who goaded the white executives, [Defendant] failed to exercise care" [*Id*. ¶ 50]. Following his termination, Plaintiff alleges that Ms. Garcia and Defendant "tr[ied] to ruin [his] career and reputation" [*See generally id*. ¶¶ 53–66].

Based on the above, Plaintiff alleges (1) racial discrimination under 42 U.S.C. § 1981, (2) race and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and (3) retaliation and retaliatory harassment in violation of Title VII. [*Id*. ¶¶ 67–85]. On February 20, 2025, United States District Clifton L. Corker dismissed Plaintiff's Title VII claims of retaliation and retaliatory harassment [Doc. 30 pp. 7–8].

Plaintiff served a Request for Production No. 8 on Defendant, asking for more information about the aforementioned March 6, 2023 email [Doc. 48 p. 2]. Defendant objected, stating that the request is irrelevant to the claim, and that it "seeks information subject to attorney/client privilege, work product doctrine, and attorney thought process" [*Id.*]. Although Defendant did not originally produce a privilege log, it provided several supplemental ones [*id.* at 3, 4; Doc. 56 p. 2], and provided a third privilege log the day after Plaintiff filed the instant motion [Doc. 55-1]. This Supplemental Privilege Log states:[1]

---

[1] The Court has omitted the column "CC" as there were no individuals carbon copied on the email exchanges.

| Bates Range | Date | From | To | Description | Privilege Asserted |
|---|---|---|---|---|---|
| 000295- 000296, 000299-000300, 000302, 000311 | March 6, 2023 | Anne Giovanoni | Paul Dubois | Internal legal department communications regarding information gleaned during investigation. | Attorney Work Product and Attorney Thought Processes. |
| 000295-000296 | March 6, 2023 | Paul Dubois | Anne Giovanoni | Internal legal department communications regarding information gleaned during investigation. | Attorney Work Product and Attorney Thought Processes. |
| 000299- 000301, 000310-000311 | March 6, 2023 | Paul Dubois | Anne Giovanoni and Stephen Schiavo | Legal assessment of investigation involving Jodi Garcia and Travis Williams. | Attorney/client Privileged Communications; Attorney Work Product; and Attorney Thought Processes. |
| 000301- 000303, 000310 | March 6, 2023 | Stephen Schiavo | Paul Dubois and Anne Giovanoni | Second opinion of legal assessment of investigation involving Jodi Garcia and Travis Williams. | Attorney/client Privileged Communications; Attorney Work Product; and Attorney Thought Processes. |
| 000304- 000309 | March 6, 2023 | Kim Mikitka | Paul Dubois and Stephanie Walker | Communication seeking legal advice regarding aspects of investigation. | Attorney/client Privileged Communications; Attorney Work Product; and Attorney Thought Processes. |
| 000306- 000308 | March 6, 2023 | Paul Dubois | Kim Mikitka and Stephanie Walker | Communication providing legal advice regarding aspects of investigation. | Attorney/Client Privileged Communications; Attorney Work Product; and Attorney Thought Processes. |
| 000310- 000312 | March 6, 2023 | Anne Giovanoni | Paul Dubois and Stephen Schiavo | Communication providing a second legal opinion in response to a request for legal advice as | Attorney/client Privileged Communications; Work Product; and Attorney Thought Processes. |

4

| | | | | to aspects of investigation. | |

Plaintiff now requests (1) an in camera review of the redacted documents to evaluate whether Paul Dubois ("Mr. Dubois"), Defendant's in-house counsel, was serving in his role as legal counsel or in his capacity as business advisor, (2) an order compelling the production of the documents or the non-privileged parts of the documents, (3) that depositions scheduled for August 5, 2025, be continued,[2] and (4) additional depositions as necessary, including retaking of depositions [Doc. 48]. For grounds, Plaintiff asserts that (1) in another case, a court found there was reason to depose Mr. Dubois in a similarly situated employment termination about his role in the decision, (2) the communications occurred before the decision to terminate was made, which supports the finding that they are not privilege or work product, and (3) Defendant has changed the privilege log descriptions from stating that the communications concerned "status" to stating it was "legal advice protected by attorney-client privilege" [Doc. 48 pp. 8–10].

Defendant responds, stating that the temporal proximity of the communications did not suggest a non-legal purpose [Doc. 55 p. 5]. Defendant argues that Plaintiff fails to provide any factual basis to suggest that Mr. Dubois recommended Plaintiff's termination or offered anything other than legal advice [*Id.* at 5–6].

Plaintiff replies by highlighting the change in the privilege logs [Doc. 56 p. 3]. Plaintiff further notes that Mr. Dubois appears to have been involved in the decision, as he was a recipient or an author on all but one of the requested emails. *Id.* In support of an in camera review, Plaintiff argues that even Defendant acknowledged Mr. Dubois was consulted regarding the termination

---

[2] In response to Plaintiff's Motion to Compel [Doc. 48], the Court ordered the parties to meet and confer and file a joint status report [Doc. 49]. Given that the parties did not resolve the issue, the Court deferred ruling on Plaintiff's Motion to Compel until it became ripe [Doc. 51].

5

Case 3:24-cv-00076-DCLC-DCP   Document 65   Filed 09/10/25   Page 5 of 10
PageID #: 606

and that this was common practice for Defendant in every termination decision. *Id.* Plaintiff contends this further supports the finding that the practice is more business than legal. *Id.* at 4.

## II. ANALYSIS

The attorney-client privilege protects "confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client." *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th Cir. 1989) (quoting *In re Grand Jury Investigation,* 723 F.2d 447, 451 (6th Cir. 1983)). "The privilege's primary purpose is to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and the administration of justice.'" *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998)); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer[]s being fully informed by the client.").

The elements of the attorney-clients are as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). "The burden of establishing the existence of the privilege rests with the person asserting it." *Prudential Def. Sols. v. Graham*, 517 F. Supp. 3d 696, 702 (E.D. Mich. 2021) (quoting *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)). "The privilege is 'narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit.'" *Id.* (quoting *Ross*, 423 F.3d at 600).

As for work product, Federal Rule of Civil Procedure 26(b)(3) provides that a party may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). "An attorney's work product is reflected in 'interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . ..'" *Gard v. Grand River Rubber & Plastics Co.*, No. 1:20-cv-125, 2021 WL 75655, at *11 (N.D. Ohio Jan. 8, 2021) (ellipses in original) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

Plaintiff asks that the Court conduct an in camera review. "[A] party seeking *in-camera review* must [first] make some threshold showing that such review is appropriate[,]" but a "lesser evidentiary showing is needed . . . than is required ultimately to overcome the privilege." *United States v. Zolin*, 491 U.S. 554, 570, 572 (1989) (citation omitted). "As the party seeking an *in camera* inspection, Plaintiff also 'must make a factual showing adequate to support a good faith belief that the review will uncover privileged documents.'" *Shah v. Metro. Life Ins. Co.*, No. 2:16-cv-1124, 2017 WL 5149145, at *2 (S.D. Ohio Oct. 9, 2017) (quoting *Konica Minolta Bus. Solutions, USA, Inc. v. Allied Office Prods., Inc.*, No. 2:06–cv–71, 2010 WL 1741336 at *2 (S.D. Ohio Apr. 29, 2010)).

The United States Supreme Court has set forth the following factors a court should review in determining whether to conduct an in camera review:

> The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review[.]

*Zolin*, 491 U.S. at 572; *see also Armouth Int'l, Inc. v. Dollar Gen. Corp.*, No. 3:14-0567, 2015 WL 6696367, at *3 (M.D. Tenn. Nov. 2, 2015) (explaining that the standard articulated in *Zolin* is

7

"appropriate . . . to evaluate whether the documents requested for in camera review may reveal evidence of business advice that is not shielded from discovery by the attorney-client privilege"). Ultimately, "whether to engage in camera review rests in the sound discretion of the district court." *Zolin*, 491 U.S. at 572; *see also Stryker Corp. v. Ridgeway*, Nos. 1:13-CV-1066, 1:14-CV-889, 2015 WL 4425947, at *3 (W.D. Mich. July 20, 2015). ("A Magistrate Judge is not required to undertake an in camera inspection of items purportedly subject to the attorney client privilege simply because such review has been requested.").

In considering the facts and circumstances of this case, the Court finds Plaintiff has met his burden of showing a factual basis to support an in camera review. First, the Court notes that the amount of materials Plaintiff asks the undersigned to review is not voluminous and consists of seven different email threads. Second, Plaintiff argues that the in camera review involves documents about his termination, which he claims was improper. Further, Plaintiff believes Mr. Dubois had a role in his wrongful termination, although Defendant disputes this contention. Even so, Plaintiff argues that the emails involve Defendant's in-house counsel acting as business advisor. *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505, 2020 WL 13157995, at *2 (E.D. Tenn. Dec. 7, 2020) (ordering in camera review to "establish whether the claimed [business advisor] exceptions to attorney-client privilege and work product protections are available").

Finally, Plaintiff cites to certain factors that support the likelihood that the evidence produced through the in camera review will establish an exception to the attorney-client privilege. For instance, Plaintiff cites to the deposition of Stephanie Walker-Hemerson, a human resources employee, who testified that it was the normal course of business for these investigations to work through their employment counsel, Mr. Dubois, and that this was how it was done in this case [Doc. 48 p. 5]. Furthermore, at least one court in a similar case involving a wrongful termination

allegation allowed Mr. Dubois to be deposed to the extent the plaintiff inquired into "his role in fact-finding, investigation, performance evaluation, looking for complaints relative to Plaintiff's conduct[,] and the performance of any HR function." *Zuhosky v. Alkermes*, No. 2:22-CV-01282 [Doc. 78] (W.D. Penn. Aug. 29, 2024).[3] Additionally, Plaintiff highlights the changing description in the privilege logs, beginning with describing the requested communications as "status communications" to later quantifying them as legal advice [Doc. 48 p. 10; *compare* Doc. 48-8 *with* Doc. 55-1].

Although Mr. Dubois appears to be the author on many of these emails and not just merely copied, *cf. Adkisson*, 2020 WL 13157995, at *1 (finding support for in camera review "where Defendant's in-house counsel was merely copied as a secondary email recipient or not included as a part of the conversation"), Defendant does not provide any evidence that further explains Mr. Dubois's role was or that supports the finding he was acting in his role as legal counsel. *See id*. at *2 (finding the defendant had failed to provide the Court "with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice.") (quoting *In re Search Warrant Executed at Law Offices of Stephen Garcia*, 173 F.3d 429 (Table), 1999 WL 137499, at *1–2 (6th Cir. Mar. 5, 1999)). In *Adkisson*, the defendant had "provide[d] specific references to the disputed privilege log[] and include[d] the affidavit of [the attorney] stating that he was acting in a legal capacity with respect to [those] emails." *Id.* In contrast, here, Defendant did not supply any further additional evidence but merely argued against Plaintiff's contention that Mr. Dubois acted in a non-legal capacity with respect to the information contained in the privileged email communications.

---

[3] The court, however, granted the defendant's motion for protective order to the extent Mr. DuBois was asked about legal advice and attorney-client privilege matters. *Zuhosky v. Alkermes*, No. 2:22-CV-01282 [Doc. 78] (W.D. Penn. Aug. 29, 2024).

Given the above, the Court finds Plaintiff has shown an in camera review of the documents is warranted.

III. **CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART, HOLDS IN ABEYANCE IN PART, AND DENIES IN PART** Plaintiff's motion [**Doc. 48**]. The Court grants Plaintiff's request for an in camera review but declines to order Defendant to produce these documents to Plaintiff prior to the Court conducting its review. To the extent Plaintiff seeks to retake discovery [Doc. 48 p. 11], the Court denies this request at this time as premature.[4]

The Court **ORDERS** Defendant to submit the challenged documents for in camera review on or before **September 17, 2025**, and include a ledger identifying the role of each individual on the emails. The Court further **ORDERS** Defendant to contact the undersigned's Judicial Assistant, Holly Nease (865-545-4260), in order to facilitate the production of documents to the Court.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

---

[4] Plaintiff had also requested that depositions scheduled for August 5, 2025, be rescheduled. The status report filed by the parties did not speak to this issue [Doc. 50]. And further, the parties do not explain the status of these depositions.