UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| TRAVIS WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:24-CV-76-DCLC-DCP |
| ALKERMES, INC., | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This action is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Motion to Compel, for *In Camera* Inspection, and to Hold Deposition and Discovery Deadline in Abeyance and Supporting Memorandum of Law [Doc. 48]. Specifically, Plaintiff moves the Court to compel Defendant to produce approximately seven email messages [*Id*.]. Plaintiff argues that it appears that Paul Dubois ("Mr. Dubois"), in-house counsel for Defendant, was involved in the decision to terminate Plaintiff, that Defendant even acknowledges Mr. Dubois was consulted regarding the termination and that this was common practice for Defendant in every termination decision, and that this practice was more business than legal [Doc. 56 p. 3–4]. The Defendant opposes the motion, arguing that the documents are protected by the attorney-client privilege and/or the work-product doctrine [Doc. 55 p. 5].

On September 10, 2025, the Court ordered Defendant to produce the emails to the undersigned for an in-camera review [Doc. 65]. After having conducted its in-camera review, the Court finds that Defendant has not established its burden in showing that they are privileged.

The Sixth Circuit has established the following elements for a document to be protected under the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)). "The burden of establishing the existence of the privilege rests with the person asserting it." *Prudential Def. Sols. v. Graham*, 517 F. Supp. 3d 696, 702 (E.D. Mich. 2021) (quoting *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)). "The privilege is 'narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit.'" *Id.* (quoting *Ross*, 423 F.3d at 600)

As for the dynamic between corporate clients, in-house counsel, and the attorney-client privilege, "it is clear that the privilege may apply where the communication is to in-house counsel rather than to outside counsel retained for a particular matter." *Kramer v. The Raymond Corp.*, No. 90-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) (citation omitted). The privilege extends to factual investigations conducted by an attorney at the request of the corporate client for the purposes of providing legal advice to the client. *Upjohn Co. v. United States*, 449 U.S. 383, 394, 395 (1981). Thus, factual information conveyed by an employee to the attorney in the course of the factual investigation is protected because the attorney-client privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390 (citation omitted). Yet, a business communication is "not protected merely because [it is] directed to an attorney . . . Rather, the corporation must clearly demonstrate that the communication in question was made for the

express purpose of securing legal not business advice." *Burton v. Zwicker & Assocs., PSC*, No. 10-227, 2012 WL 12925675, at *2 (E.D. Ky. Jan. 9, 2012) (ellipses in original) (quoting Kramer, 1992 WL 122856, at *1).

"When a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.'" *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). In other words, courts must assess the predominant purpose of the communication "dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting legal authorities and advice that can be given by a non-lawyer." *In re Cnty of Erie*, 473 F.3d at 420–21.

As for work product doctrine, Federal Rule of Civil Procedure 26(b)(3) provides that a party may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial or by another party or its representative." Fed. R. Civ. P. 26(b)(3). "An attorney's work product is reflected in 'interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . ." *Gard v. Grand River Rubber & Plastics Co.*, No. 1:20-cv-125, 2021 WL 75655, at *11 (N.D. Ohio Jan. 8, 2021) (ellipses in original) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). The determination of whether a document has been prepared in anticipation of litigation depends on "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective expectation was objectively reasonable." *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *United States v. Roxworthy*, 457 F.3d 590, 595, 598–99 (6th Cir. 2006)). Furthermore, "[w]hether a party reasonably anticipated litigation at a particular point in time does

3

not answer the question of whether a disputed document was prepared 'because of' litigation or not." *Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *4 (S.D. Ohio Nov. 13, 2012) (citing *In re Pros. Direct Ins. Co.*, 578 F.3d at 439). Where the ordinary business purpose was the "driving force" for creation of a document that was created as part of the ordinary business of a party, it is not protected by the work product doctrine. *In re Pros. Direct Ins. Co.*, 578 F.3d at 439 (citing *Roxworthy*, 537 F.3d at 595). Against this background, the Court must examine the documents themselves and the context within which they were prepared. *Id.*

For the emails at issue, the Court finds Defendant has not established that they are protected by the attorney-client privilege or the work-product doctrine. As an initial matter, it does not appear to the Court that any of the emails sought legal advice. And further, "the vast bulk of the email[s] describe[] a management/personnel issue, not a threat of litigation," as the emails focus on the incident, what the next steps would be, and whether to respond to the anonymous reporter. *McLaren Health Care Corp. v. Gartner, Inc.*, No. 2:21-CV-12598, 2025 WL 2524110, at *3 (E.D. Mich. Sept. 2, 2025) (finding that attorney-client privilege and the work-product doctrine did not apply to an email with the "primary purpose . . . to alert the email recipients of the risk to the project posed by a problem employee's conduct").

The emails here appear to be merely passing along information. Where the purpose of the email is to pass along information or to make sure that someone is aware of something, courts have found it to be unprivileged. *See M.H. v. Akron City Sch. Dist. Bd. of Educ.*, No. 5:18-CV-870, 2019 WL 2346274, at *3 (N.D. Ohio Sept. 12, 2019) (finding that while an email forwarded by a client to their general counsel stating "FYI" could be conceived as "implicitly seeking legal advice," it is "most commonly interpreted as simply passing along information with no further response or action required," especially where general counsel responded she would "take care" of the request,

4

without providing legal advice). For instance, one email states that information about the incident was forwarded to in-house counsel, Mr. Dubois, with a line stating, "In case Steve did not send it to you already." This is not a request for legal advice but is rather the passing on of information.

Defendant's withheld emails also include an email from Mr. Dubois recounting his conversation with members of Defendant's human resources department, where the employees reported the next steps that they planned to take in the investigation and subsequent termination of Plaintiff. But this too merely passes on information and does not discuss the threat of litigation. It does not appear to the Court that Mr. Dubois participated in the investigation, and to the extent that the email implicitly requested any legal advice, that request was clearly "incidental to considerations of what is most prudent for the successful operation of the business." *Alomari*, 626 F. App'x at 572 (quoting *Marten v. Yellow Freight Sys., Inc.*, No. CIV. A. 96–2013–GTV, 1998 WL 13244 (D. Kan. Jan. 6, 1998)). Furthermore, requests and communications relating to an internal investigation and the company's subsequent discussions about how to conduct investigations "are often conducted internally by a company's human resources department." *Guy v. Yusen Logistics (Americas), Inc.*, No. 18-cv-2117, 2018 WL 8547666, at *4 (W.D. Tenn. Dec. 20, 2018) (finding that emails to in-house counsel both before and during an investigation of an employee were not privileged because "providing business advice was the primary purpose of the communication" and that "anticipated litigation was [not] the driving force" behind the documents). The predominant purpose of such communications is not to solicit legal advice. *Id.* (citing *Alomari*, 626 F. App'x at 570).

Defendant has not met its burden of establishing that the emails are protected. Given that, the Court **GRANTS** Plaintiff's Motion to Compel [Doc. 48] to the extent he seeks an order

5

compelling Defendant to produce the withheld emails. Defendant **SHALL** produce these emails to Plaintiff on or before **October 20, 2025**.

As a final matter, on August 15, 2025, Plaintiff filed a Motion to Compel Deposition of Paul Dubois [Doc. 53]. The Court notes that the parties' briefing on this motion relates somewhat to the issues presented here [*See* Docs. 53, 58, and 60]. The Court therefore **ORDERS** the parties to meet and confer on this motion, via telephone, video conference, or in person on or before **October 23, 2025**, and to file a status report on whether a ruling is necessary on or before **October 24, 2025**.

**IT IS SO ORDERED.**

ENTER:

_____
Debra C. Poplin
United States Magistrate Judge